GINA MCCARTHY, COMMISSIONER OF
ENVIRONMENTAL PROTECTION *v.*
CUSTOM DESIGN SERVICES,
INC., ET AL.
(AC 31117)

Harper, Alvord and Hennessy, Js.

Argued November 10, 2010—officially released January 25, 2011

*Kimberly P. Massicotte,* assistant attorney general, with whom were *Scott N. Koschwitz,* assistant attorney general, and, on the brief, *Richard Blumenthal,* former attorney general, and *Sharon A. Scully,* assistant attorney general, for the appellant (plaintiff).

*Gerald Hecht,* for the appellees (defendants).

### Opinion

ALVORD, J. The plaintiff, Gina McCarthy, the commissioner of environmental protection, appeals from the judgment of the trial court denying her motion for contempt against the defendants, Custom Design Services, Inc., Sulim Limited Partnership and Robert J. Vetter, for alleged violations of a stipulated judgment. The plaintiff claims that the court improperly found that (1) the civil penalty provision in the stipulated judgment gave the defendants the option to pay a civil penalty in lieu of performing the injunctive relief provisions of the judgment, (2) the defendants were not in contempt because they no longer owned the property and (3) the defendants' failure to perform was not wilful. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our determination of the plaintiff's appeal. On July 17, 2002, the department of environmental protection (department)[1] issued two orders requiring that the defendants take a number of actions to bring their property, located at 46 South Street, Danbury, into compliance with our state's water pollution and hazardous waste statutes. On January 13, 2005, the department filed a complaint against the defendants, alleging multiple violations of those administrative orders and seeking temporary and permanent injunctive relief.[2]

On March 6, 2006, the defendants' environmental engineer, Theodore J. Stevens, submitted a site investigation report, concluding that there was "little evidence of significant contamination of soil or groundwater at the site" and suggesting certain remedial actions. The department's compliance engineer, Kevin Clements, responded on July 13, 2006 (Clements letter), stating in part that "[f]urther investigation and sampling are necessary" before the department would approve the site investigation report.[3]

Thereafter, on November 15, 2006, the court granted the parties' joint motion for the entry of a stipulated judgment and rendered judgment thereon. The stipulated judgment included two sections, section A, "Injunctive Relief," and section B, "Civil Penalty." Section A of the judgment specified remedial actions to

---

[1] Because the commissioner of environmental protection acts on behalf of the department of environmental protection, references in this opinion to the department include the commissioner.

[2] The complaint invoked General Statutes § 22a-114 et seq., governing the control of hazardous waste, and General Statutes § 22a-416 et seq., governing water pollution.

[3] The July 13, 2006 letter references previous correspondence between the parties. According to that letter, the initial response to the site investigation report was via an April 18, 2006 memorandum from the department to the defendants, which Stevens responded to on May 25, 2006. The April memorandum and May letter are not in the record except by reference.

be taken by the defendants to bring the property into compliance. Section B assessed a civil penalty in the total amount of $150,000 "payable as follows: (a) The defendants shall pay the amount of $50,000.00 on or before November 30, 2006. (b) In the event the defendants fail to timely comply with any of the injunctive provisions outlined in [s]ection A of this judgment or fail to pay the $50,000.00 as specified in paragraph B (1) (a) above, then the remaining $100,000.00 shall become due and payable within ten days of the defendants' receipt of written notice from the Attorney General's Office . . . ."

The November 15, 2006 stipulated judgment also required, among other things, that the defendants respond to the Clements letter, which highlighted a number of problems with the site investigation report. On November 30, 2006, Stevens replied to each of Clements' comments in a letter (Stevens letter). Two weeks later, the office of the attorney general, on behalf of the department, issued a demand letter for the entirety of the civil penalty in the amount of $150,000, plus interest and costs.

No action was taken by either the defendants or the department for two months. On February 13, 2007, the defendants moved to "reopen and/or vacate" the judgment on the ground that the department had not responded in a timely fashion to the Stevens letter. The defendants argued that they had complied with the judgment by providing the Stevens letter with the required revisions to the site investigation report and that the department's "inaction constitutes a breach of the stipulation . . . ." The court sustained the department's objection, in which the department argued, inter alia, that there was nothing in the judgment that required it to respond by a certain date.

Not until March 5, 2007, did the department's engineer, Clements, respond to the Stevens letter by

requesting that the defendants provide supplementary testing results before the department would approve the site investigation report. Neither party took any action for one additional year until, on May 16, 2008, the department filed the motion for contempt underlying this appeal. The motion for contempt alleged that the defendants had violated the stipulated judgment in failing to (1) submit a revised site investigation report, (2) perform remedial measures, (3) monitor those remedial measures and (4) pay the civil penalty.[4]

The defendants argued in their opposition, inter alia, that (1) they could not take remedial measures because they did not own the property and had no access to the property,[5] (2) they were unable to adhere to the court order because of the department's inaction and had, in fact, filed a motion to open because of the department's unresponsive behavior and (3) their inability to pay the civil sanctions did not amount to wilful disregard of a court order as required for an order of civil contempt.

On August 27, 2008, in an effort to collect the $150,000 judgment, the department, as judgment creditor, served the defendants, as judgment debtors, postjudgment interrogatories. Shortly thereafter, the defendants filed a supplemental opposition to the motion for contempt, arguing that the stipulated judgment, by its terms, entitled the department to elect only one remedy for noncompliance with the injunctive provisions, payment of the $150,000 civil penalty. The defendants claimed that

---

[4] This first motion for contempt also alleged that the defendants transferred the land without informing the plaintiff. On October 6, 2008, the plaintiff filed an amended motion for contempt, removing allegations of purposeful transfer of the property.

[5] Prior to the filing of the stipulated judgment, creditors had commenced foreclosure proceedings against the property, which ultimately resulted in a judgment of foreclosure by sale and a transfer of the property. It is undisputed that the defendants no longer owned the property when the motion for contempt was filed.

the "[p]laintiff chose [her] remedy. [She] chose to pursue collection of a $150,000 'judgment,' and, as such, there can be no contempt of a court order that, by its own terms, contains its own penalty and remedy."

After hearing testimony on the motion for contempt on September 25, 2008, the court requested that the parties file posttrial briefs. The defendants again argued that (1) the stipulated judgment was self-enforcing because upon demanding that the civil penalty be paid, the department was exercising its available remedy and could not pursue contempt, and (2) the court could not compel the defendants to take remedial actions on property they did not own or to which they lacked access. The department argued that (1) the court had the authority to compel the defendants to seek access to the site, particularly because they *did* have access to the site until January 23, 2008, and (2) the defendants' failure to comply with the terms of the stipulation subjected them to the power of the court to enforce its orders.

On October 8, 2008, the court rendered judgment for the entire $150,000 penalty against the defendants. On March 16, 2009, the court denied the motion for contempt, finding that "[a]bsent wilful conduct by the defendants and in light of the plausible interpretation of the stipulated judgment as allowing a monetary judgment as an alternative to performance of remedial actions, [it] cannot find that the defendants are in contempt." This appeal followed.

We first set forth the applicable standard of review. "Guided by the principles that limit our review, our analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This

is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).

"Civil contempt is committed when a person violates an order of court which requires that person in specific and definite language to do or refrain from doing an act or series of acts. . . . Whether an order is sufficiently clear and unambiguous is a necessary prerequisite for a finding of contempt because [t]he contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind. . . . This is a long-standing tenet of the law of contempt. . . . It is also logically sound that a person must not be found in contempt of a court order when ambiguity either renders compliance with the order impossible, because it is not clear enough to put a reasonable person on notice of what is required for compliance, or makes the order susceptible to a court's arbitrary interpretation of whether a party is in compliance with the order." (Citations omitted; internal quotation marks omitted.) Id., 695.

Our initial inquiry is whether the stipulated judgment constituted a court order that was sufficiently clear and unambiguous so as to support an order of contempt. The department claims that the stipulated judgment was unambiguous and that the injunctive provisions were binding despite the civil penalty portion, which was meant only as an inducement to obtain compliance with the injunctive section. The defendants contend

that the stipulated judgment was not clear and unambiguous. Specifically, the defendants argue that they interpreted the stipulation as a self-executing agreement that provided that the collection of the civil penalty for $150,000 was the sole punishment for noncompliance and that it allowed a monetary judgment as an alternative to performance of the remedial actions. The trial court found this to be a plausible interpretation and, thus, declined to find the defendants in contempt. We agree with the court's analysis.

In undertaking our plenary review, the assessment of whether the stipulated judgment was sufficiently clear and unambiguous is guided by the tenets of contract law. "A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction." (Internal quotation marks omitted.) *Rocque* v. *Northeast Utilities Service Co.*, 254 Conn. 78, 83, 755 A.2d 196 (2000).

"Where the language is unambiguous, we must give the contract effect according to its terms. . . . Where the language is ambiguous, however, we must construe those ambiguities against the drafter. . . . A contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . [T]he mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . In contrast, a contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. . . . [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so. . . . If the language of the contract is susceptible to

more than one reasonable interpretation, the contract is ambiguous." (Citations omitted; internal quotation marks omitted.) *Cantonbury Heights Condominium Assn., Inc.* v. *Local Land Development, LLC*, 273 Conn. 724, 735, 873 A.2d 898 (2005).

The language of the stipulated judgment fails to reflect whether the obligations imposed under section A remain enforceable if the defendants become fully liable for the $150,000 civil penalty imposed by section B. Reasonable minds could differ as to whether the imposition of liability on the defendants for the full $150,000 under section B was meant to preempt the department's ability to seek other possible penalties or its authority to demand implementation of the remedial measures in section A. Consequently, because the "language of the contract is susceptible to more than one reasonable interpretation, the contract is ambiguous." (Internal quotation marks omitted.) Id. Accordingly, we determine that the language of the stipulated judgment is not sufficiently clear and unambiguous so as to support a judgment of contempt.[6]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] We acknowledge that the trial court cited *Sablosky* v. *Sablosky*, 258 Conn. 713, 723, 784 A.2d 890 (2001), for the proposition that a finding of ambiguity does not bar a finding of contempt. In *In re Leah S.*, supra, 284 Conn. 685, our Supreme Court distinguished the holding in *Sablosky*. It stated that although the court determined in *Sablosky* that a finding of wilfulness is not, as a matter of law, precluded by an ambiguity in the order underlying a claim of contempt, the *Sablosky* decision was "necessarily limited by the factual and procedural context in which the alleged ambiguity arose"; id., 695 n.9; where "previously compliant parties stopped complying with court orders after changes in circumstances rendered the orders unclear without first seeking judicial clarification . . . ." Id., 700. The present appeal is not analogous to *Sablosky*, and, therefore, our inquiry stops upon the determination that, upon plenary review, the stipulated judgment was not sufficiently clear and unambiguous to support a judgment of contempt.