IRIS S. LYNN *v.* RODERICK A. LYNN
(AC 32060)

DiPentima, C. J., and Lavine and Sullivan, Js.

Argued February 16—officially released July 26, 2011

*Roderick A. Lynn*, pro se, the appellant (defendant).

*Jonathan D. Chomick*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. The self-represented defendant, Roderick A. Lynn, appeals from the postdissolution judgment of contempt, claiming that the court, *Dolan, J.*, improperly (1) found him in contempt[1] and (2) awarded attorney's fees to the plaintiff, Iris S. Lynn. We agree that the court improperly found the defendant in contempt and therefore reverse the judgment of the trial court.[2]

The record reveals the following facts that are relevant to this appeal. The plaintiff, who married the defendant in 1991, commenced an action to dissolve the

---

[1] On appeal, the defendant set forth multiple claims, many of which are interrelated. We have consolidated the defendant's claims in order to address them in a coherent fashion.

[2] Because we conclude that the court improperly found the defendant in contempt, we need not address the defendant's claim concerning attorney's fees.

marriage in December, 2001. On February 20, 2008, the court, *Prestley, J.*, rendered a judgment of dissolution in a memorandum of decision, wherein she found, among other things, that in 1993, the parties moved into the marital home, a two-family residence, which was owned by the defendant. The parties resided in one of the apartments on the premises and rented the other. In the spring of 2007, the marital home was appraised at a value of $276,000. At the time of trial, title to the marital home was encumbered by an outstanding first mortgage of approximately $92,000. Just prior to the commencement of the dissolution action, the defendant had encumbered the marital home with a $30,000 seven year balloon mortgage held by his father, Jack E. Lynn (defendant's father).[3]

Judge Prestley also found that "the plaintiff currently lives in the family home, collects the rent of $900 per month on the other apartment, pays out-of-pocket an additional $200 and pays the mortgage of $1100 per month. The plaintiff has received the rental income from that property since September, 2003. She has taken the home mortgage deduction, which may have resulting negative tax consequences to both parties."

In dissolving the parties' marriage, Judge Prestley issued the following orders, among others. "The marital home at 28-30 Washington Street in Plainville . . . shall be listed for sale by a realtor agreed upon by the parties. If they cannot agree, Attorney [Jennifer E.] Davis[4] shall select a realtor. The proceeds of the sale, after closing costs are paid, shall be held in escrow . . . . The proceeds shall be divided [fifty-fifty]. The defendant is 100 [percent] responsible for the mortgage

[3] After the dissolution action was commenced, the defendant encumbered the marital home with a third mortgage held by his brother Jeffrey Lynn. Although that mortgage was the subject of contempt proceedings in July, 2009, it is not relevant to this appeal.

[4] Davis had been appointed guardian ad litem of the parties' minor children.

debt owed his father and brother. *If the closing costs include and result in a pay off of the mortgage notes to the defendant's father* and brother, the defendant's share of the proceeds shall be reduced by that amount." (Emphasis added.) A special master, attorney Scott A. Sandler, was appointed to facilitate the sale of the marital home, which was in foreclosure and sold in September, 2009.

The defendant subsequently filed numerous motions regarding the sale of the marital home. On December 16, 2008, the defendant filed a postjudgment motion for order regarding the sale of marital residence.[5] On June 25, 2009, the defendant filed a motion for contempt for failure to pay sewer taxes.[6] On October 6, 2009, the defendant filed a motion for order regarding the distribution of the proceeds from the sale of the marital property.[7] Our review of the docket sheet discloses that none of those motions was ruled on by the trial court.

On October 13, 2009, the plaintiff filed a motion for contempt.[8] The defendant filed an objection to the contempt motion on November 2, 2009.[9] On December 22,

---

[5] The essence of the defendant's motion was to seek the assistance of the court in facilitating the sale of the marital home. The defendant made allegations against the plaintiff to the effect that she was impeding the sale of the marital home.

[6] The essence of the defendant's motion was that the plaintiff allegedly failed to pay the sewer taxes owed for the marital home, which allegedly caused a purported sale of the property to fail.

[7] The essence of the defendant's motion concerned factual claims that, if true, would have affected the amount due the parties from the proceeds of the sale of the marital home.

[8] The plaintiff's motion for contempt stated in relevant part: "3. The Judgment of the Court (*Prestley, J.*) in subsequent order of the Court (*Dolan, J.*) required the Defendant to pay his father's mortgage from his portion of the funds from said sale. After payment of the first mortgage, real estate taxes, municipal liens, real estate commission and HUD closing adjustments.

"4. The mortgage held by the Defendant's father was paid in full in defiance of the . . . Court Orders by the Defendant."

[9] The defendant's objection stated in part: "Item 4 of Plaintiff's motion states: 'The mortgage held by the Defendant's father was paid in full in defiance of the aforesaid Court Orders by the Defendant.' This statement

2009, the parties appeared before Judge Dolan pursuant to the plaintiff's motion for contempt. At the commencement of the proceeding, the defendant represented himself. The transcript reveals that at some prior proceeding, the court had ordered the proceeds of the sale of the marital home disbursed.[10] The following colloquy transpired between the court and the plaintiff's counsel:

"[The Plaintiff's Counsel]: What Your Honor told [the defendant] at that hearing . . . that if he paid his father the full amount . . . he is going to

"The Court: That he was going to have problems.

"[The Plaintiff's Counsel]: . . . incur your wrath. . . . He paid his father the full amount, and I have the document. . . . May I pass that up to the clerk?

"The Court: Sir, [to the defendant] get in here with a lawyer, because you run the risk of—you run the serious risk of going to jail. Get a lawyer.

"[The Defendant]: I don't have the funds to get a lawyer.

"The Court: Then I'm going to appoint a lawyer, because I'm going to put you in jail today, and then your father will give you back the money tomorrow, and then we'll all live happily ever after. It's going to be the same story that we did the last time, and you want to do this the easy way, or the hard way.

"[The Defendant]: The funds were not distributed to me, Your Honor. I have no ability to pay this."

by plaintiff implies first and foremost that Defendant had control over the disbursement of closing costs in connection with the sale of the marital property."

[10] Neither party requested that Judge Dolan articulate his factual findings. Although it is the appellant's responsibility to provide an adequate record for review; see Practice Book §§ 60-5 and 61-10; on occasion, it may be in the interest of the appellee to ensure that the record is clear for appellate review.

The court then heard representations from the plaintiff's counsel and calculated roughly the amount of money it believed that the defendant owed to the plaintiff. The defendant represented to the court that it was the plaintiff who caused the marital home to be foreclosed and that she had realized her share of the equity in the marital home and that was the basis of the defendant's motions that he wanted to be heard. The court stated: "I'm not dealing with that."

The court appointed attorney Robert Sussdorff to represent the defendant. In appointing Sussdorff, the court stated that the defendant "runs an absolute risk of going to jail today. Under the terms of the divorce judgment, he was to . . . be responsible to pay his father $48,000, approximately. He, of course, did not pay it. He gave the $48,000 to his father and claims that he has no control over the situation. We're going to have a hearing, and if I find that he's in contempt, I am going to put him in jail today unless he comes up with a bank check for $20,000. You know what? I'm going to give you [the plaintiff's counsel] $2500 for counsel fees, too."

Thereafter the plaintiff's counsel made specific representations of fact to the court as to the amount of money the defendant owed to the plaintiff. The court found that the amount owed to the plaintiff plus attorney's fees totaled $21,671. The court told the defendant that he would go to jail that day unless he produced the funds. Sussdorff interjected that he had not yet had an opportunity to meet with the defendant. The defendant spoke up, stating: "I have five motions here that are relevant, which he didn't even meet with me yet." The court again stated that it would not hear the motions. The defendant also informed the court that the plaintiff had received rental income from the marital home. The court stated: "Sir, I'm not interested in any of this. All I want to know is . . . why you paid your

father, when you were ordered not to pay your father, and then I'll decide whether or not I'm going to put you in jail." Sussdorff then asked for time to speak to the defendant. Although the court initially refused to give Sussdorff time to speak to the defendant, it later permitted him to do so during the luncheon recess. Sussdorff also asked to see the court file.

When the proceeding reconvened at 2 p.m., counsel represented to the court that the defendant had not paid the mortgage owed to the defendant's father. The court asked if the defendant should be put on the stand or whether there was an agreement. Sussdorff stated: "Your Honor, I would like to see the contempt [motion]. I haven't seen the contempt motion." The court informed Sussdorff that all the court was interested in was whether the defendant had paid his father and that he was not hearing any of the defendant's motions. Sussdorff informed the court that the defendant literally never received any of the funds from the sale of the house and that he could not have paid his father with those funds. The court asked Sussdorff if he wanted to offer the defendant's testimony. The defendant then stated that he had not had time to prepare and that he was being denied due process of law. The court found that the defendant had "all the time in the world to prepare. We're doing this right now." It also came to light that Sussdorff had not been given the complete court file, which consisted of five volumes, to review. At Sussdorff's request, the court ordered the plaintiff's counsel to show Sussdorff the contempt motion. The matter was passed briefly by the court.

When the matter came before the court again, the plaintiff's counsel sought to have the defendant stipulate to certain facts. The court interrupted, stating that the defendant would not stipulate to anything. The following colloquy then transpired:

"[Sussdorff]: [T]he payment to pay off the mortgage was not—that money was never in [the defendant's] hands. He never had that $48,000. It wasn't his. He didn't disburse that funds to his father.

"The Court: What do you mean, he didn't? All right. Never mind. Go ahead. You're in an impossible position, counsel. . . .

"[Sussdorff]: [The defendant] did not have that $48,000 in his hand, and if he had it . . . it went to pay off that mortgage. It did not go through his hands . . . according to the settlement statement.

"The Court: All right. I'm going to hold him in deliberate contempt, and I'm going to order him incarcerated. I'll give you your choice, sir. I'll give you until 10 o'clock tomorrow morning, or I'll lock you up now. It's your pleasure. If you don't show up here at 10 o'clock tomorrow, I'm going to hold you in jail longer. Do you want to go right now, or would you rather wait and clean up whatever affairs you have to clean up and be here tomorrow morning at 10 o'clock?

"[The Defendant]: Tomorrow morning at ten is fine.

"The Court: That's fine. Okay, and the purge amount is $21,671.19, and if you are not here tomorrow, sir, the number is going up to $50,000. And it's going to be a cash bond."[11]

The defendant produced the sum ordered on December 23, 2009, and was not incarcerated. The defendant appealed from the court's judgment of contempt.

---

[11] The court issued the following relevant order. "1. Due to the Defendant's risk of incarceration, Attorney Robert Sussdorff is appointed as counsel for the Defendant. 2. The Defendant is found in contempt of the court order dated February 20, 2008. 3. The Defendant is to be present in court tomorrow, December 23, 2009 at 10:00 a.m., at which time he will be remanded to the custody of the Commissioner of Correction . . . with a purge amount of $21,671.19. If the Defendant fails to appear in court tomorrow, then the court will issue a capias for his arrest with a cash bond amount of $50,000."

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007).[12]

"[C]ivil contempt is conduct directed against the rights of the opposing party." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 545, 710 A.2d 757 (1998). "Contempts of court may be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court." (Internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 352, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002). Failure to comply with a dissolution judgment is an indirect contempt because it occurred outside the presence of the court. Id. "[A] finding of indirect civil contempt must be established by sufficient proof that is premised upon competent evidence presented to the trial court in accordance with the rules of procedure as in ordinary cases. . . . A finding of contempt is a factual finding.

---

[12] On appeal, the defendant claims that because "the February 20, 2008, Final Judgment did not address the issue of a potential shortfall in anticipated net proceeds (after closing costs had been paid), said Final Judgment became vague and irreconcilable." We disagree. Judge Prestley found that "[t]he defendant is 100 [percent] responsible for the mortgage debt owed to his father . . . ." The language at issue identifies who is to pay the mortgage debt, not how it is to be paid.

. . . We will reverse that finding only if we conclude [that] the trial court abused its discretion." (Internal quotation marks omitted.) Id., 352–53.

On appeal, the defendant claims, among other things, that the court misconstrued the judgment and denied him due process of law. We agree.

"[T]he construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as that which is expressed. . . . In doing so, it assists a reviewing court to keep in mind the theory on which the case was tried and on which the trial court decided it." (Citations omitted; internal quotation marks omitted.) *Steiner* v. *Middlesex Mutual Assurance Co.*, 44 Conn. App. 415, 428, 689 A.2d 1154 (1997).

"A fundamental principle in marital dissolution proceedings is that the trial court has broad discretion in determining the equitable allocation of the parties' assets. . . . [B]ecause every family situation is unique, the trial court drafting a dissolution decree has wide discretion to make suitable orders to fit the circumstances. . . . Furthermore, the allocation of liabilities and debts is a part of the court's broad authority in the assignment of property." (Citations omitted; internal quotation marks omitted.) *McKenna* v. *Delente*, 123 Conn. App. 146, 162, 2 A.3d 38 (2010).

In her February 20, 2008 judgment, Judge Prestley found that the plaintiff resided in the marital home and collected the rental income and was paying the mortgage and took the mortgage deduction on her

income tax returns. The court also stated specifically that "[i]n making this order, this court considered [those facts] . . . ." In the numerous motions the defendant filed, he claimed that the plaintiff retained the income from the second apartment and failed to pay the mortgage, which caused the marital home to go into foreclosure and lessened the proceeds of the sale of the marital home and the funds to which the plaintiff was entitled. We do not know if the allegations of those motions are truthful or legitimate, but they deserved to be adjudicated before the court to determine the amount of money owed to the plaintiff, if any. Moreover, the change of circumstances regarding the rental income raised a question as to whether the defendant's failure to pay his father was wilful or excused by a good faith belief or dispute.

"A judgment of contempt cannot be based on representations of counsel in a motion, but must be supported by evidence produced in court at a proper proceeding." (Internal quotation marks omitted.) *Kelly* v. *Kelly*, 54 Conn. App. 50, 60, 732 A.2d 808 (1999). "A finding of indirect civil contempt must be established by sufficient proof that is premised on competent evidence presented to the trial court and based on *sworn* testimony. . . . A trial-like hearing should be held if issues of fact are disputed. . . . Due process of law requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation. . . . Because the inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt . . . the [party] had the right to demonstrate that his failure to comply with the order of the trial

court was excusable." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 59.

The judgment of dissolution ordered that the "defendant is 100 [percent] responsible for the mortgage debt owed to his father and brother. *If the closing costs include and result in a pay off of the mortgage notes to the defendant's father* and brother, the defendant's share of the proceeds shall be reduced by that amount." (Emphasis added.) The judgment of dissolution therefore permitted the defendant's father to be paid with proceeds of the sale of the marital home. The plaintiff's motion for contempt stated that "the mortgage held by the defendant's father was paid in full in defiance of the aforesaid court orders." Judge Dolan stated that the defendant paid the mortgage debt owed to his father from the proceeds of the sale. Under any construction of the dissolution judgment, it was not wrongful for the mortgage debt to the defendant's father to be paid from the proceeds of the sale. Whether the defendant owes the plaintiff funds, however, is a different matter. We, therefore, reverse the judgment of contempt and remand the matter for a hearing; see *Kelly* v. *Kelly*, supra, 54 Conn. App. 59; to determine whether the defendant owes the plaintiff funds, and if so, how much.

The judgment is reversed and the case is remanded for further proceedings.

In this opinion DiPENTIMA, C. J., concurred.

SULLIVAN, J., dissenting. I respectfully disagree with the majority's conclusion that the trial court abused its discretion because I believe that the defendant, Roderick A. Lynn, has provided this court with an inadequate record to review.[1] Accordingly, I dissent.

---

[1] In footnote 10 of its opinion, the majority apparently acknowledges the shortcomings in the record, but for unstated reasons indicates that it was the appellee's burden in the present case to provide an adequate record for our review.

The court did not file a memorandum of decision and the defendant did not request any articulation, although there is an unsigned transcript of the contempt proceeding. "When the record does not contain a memorandum of decision or signed transcript of the court's oral decision, this court has declined to review the claims on appeal because the record is inadequate for review. . . . When there is an unsigned transcript on file in connection with the appeal, this court *may* review the claims if the transcript adequately reveals the court's findings and conclusions with its decision." (Citation omitted; emphasis added.) *Watrous* v. *Watrous*, 108 Conn. App. 813, 831 n.8, 949 A.2d 557 (2008). In the present case, I would not exercise our discretion to review the defendant's claims because the unsigned transcript does not explicate the court's basis for its findings and conclusions.

Furthermore, even if I reviewed the limited record presented to us, I would conclude that any error was harmless. The transcript reveals that the only evidence that the defendant offered that might have supported his motions was his own testimony. Although the defendant ultimately did not testify under oath, he did offer several explanations to the court for why his father's mortgage was paid in full out of the proceeds of the sale of the marital home, including that he believed that the plaintiff, Iris S. Lynn, had already received her portion of the proceeds and that he did not have control over the funds. Again, we do not know the basis for the court's ultimate conclusion, but in finding the defendant in contempt, the court implicitly did not credit the defendant's explanations. There is nothing in the record to suggest that had the court agreed to consider the defendant's motions, it would have modified the judgment.

Accordingly, I respectfully dissent.