******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TERRY ALIANO *v*. MICHAEL ALIANO
(AC 34830)

DiPentima, C. J., and Sheldon and Foti, Js.

*Argued October 16, 2013—officially released February 18, 2014*

(Appeal from Superior Court, judicial district of New London at Norwich, Shluger, J.)

*John F. Morris*, for the appellant (plaintiff).

*Timothy P. Lenes*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Terry Aliano,[1] appeals from the denial of her postdissolution motion for contempt filed against the defendant, Michael Aliano. On appeal, she claims that the court improperly found that the defendant's failure to pay a lump sum financial award was not wilful noncompliance with the terms of the parties' dissolution judgment. We disagree, and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. The parties were married on February 24, 2007. In March, 2010, the plaintiff commenced an action seeking a dissolution of the marriage. On November 2, 2011, following a bifurcated trial, the court issued two memoranda of decision; one addressing custody and access regarding the parties' minor child and one addressing the various financial issues.[2] The court found that the defendant was the president and chief executive officer of a number of family businesses founded by his deceased father, Ronald Aliano (decedent). The estate of the decedent was the subject of a probate dispute involving a woman who claimed to be an heir of the decedent. Nevertheless, the defendant was expected to "inherit a significant portion of the estimated $10 million estate." The court issued a number of financial orders, including awarding alimony to the plaintiff for a limited time period and dividing the parties' property. With respect to the defendant's expected inheritance from the decedent's estate, the court ordered in paragraph 12 of its decision: "The [defendant] shall make a payment to the [plaintiff] in the amount of $100,000 within 30 days of his receiving his inheritance so long as such receipt is in excess of $250,000."

On June 21, 2012, the plaintiff filed a motion for contempt, alleging that the defendant had wilfully failed, refused or neglected to pay her the $100,000 as required by the court's judgment. She further claimed that "[o]n March 30, 2012, the Norwich Probate Court distributed the business known as American Ambulance Service, Inc., in equal parts between [the defendant] and . . . Rhonda Aliano Quinn (the [d]efendant's sister). The said distribution was the major asset of the estate valued in excess of $4,700,000." In addition to seeking a finding of contempt and payment of the $100,000, the plaintiff requested that the court order the defendant to pay statutory interest pursuant to General Statutes § 37-3a and attorney's fees related to the prosecution of her contempt motion.[3]

The court held a hearing on July 16, 2012, where the plaintiff called as a witness Andrew Messier, the executor of the decedent's estate and the trustee for two of the trusts associated with the estate. Messier testified that the defendant received 50 percent of the

shares of stock of an ambulance company owned by the decedent. The value of the stock received by the defendant was $2,350,000. This was the only distribution from the estate to the defendant.

The plaintiff testified that she had not received the $100,000 payment and that the defendant had not informed her of his receipt of a portion of his inheritance. The defendant testified that he had not received any cash or negotiable instruments from the decedent's estate and that a trial was pending in the Probate Court regarding all of the other assets of that estate. The defendant stated that he anticipated receiving a substantial amount of cash from the decedent's estate. During cross-examination, in response to a question about whether he had ever made an effort to communicate with the plaintiff about the inheritance issue, the defendant stated: "It's my understanding I did not have to pay that until which time I got all my inheritance, and it was cash. [My attorney] was aware I would be paying [the plaintiff] when I got the liquid assets to pay her. I don't have the money to pay her right now." He then iterated that he had not received his total inheritance, and the portion that he had was in the form of stock.

At the conclusion of the hearing, the court stated: "This was an interesting legal argument . . . but I don't think it goes to what the court's intention was in paragraph [12] of the judgment. It was the court's intent that [the defendant] would pay that sum of cash when he received cash. And the court knew that he was going to receive real estate; the court knew he was going to receive stock in a closely held corporation, but the court specifically used as the trigger point when he received in excess of $250,000, and he hasn't yet done that. So, I don't find he is in contempt. And I don't find the trigger has been pulled yet. Frankly, if he received $250,000 in negotiable securities, in marketable securities, in a publically traded company that could be sold on the open market, I would read the situation differently. I don't view he has the liquid money from his inheritance yet. . . . It says in excess of $250,000. That was my intent. And it is not my intent that, [the defendant], in case you are thinking that all of your inheritance has to be complete, but when you receive $250,000 of liquid assets, marketable securities, you should pay [the plaintiff] $100,000. That contempt, if there is one, would be viewed differently."

Counsel for the plaintiff inquired whether the court was clarifying the dissolution judgment so that the $100,000 obligation would be triggered only if the defendant received an inheritance of cash. The court responded: "I'd rather not do that because there isn't a motion to clarify. If and when he receives something that is readily convertible to cash, I would certainly entertain your motion for contempt if it wasn't effectuated, but if it is a building that might be sold, might not

be sold, that is probably in that gray area that I won't go that far. When there is cash, when there is stock in a publically traded corporation, that I consider to be readily available cash." The plaintiff's counsel then questioned whether the court was altering the terms of the dissolution judgment, to which the court responded, "[t]hat's not what I am doing." The following colloquy then occurred between the plaintiff's counsel and the court:

"[The Plaintiff's Counsel]: I understand you are not doing that, and I am troubled because it sounds like it is going in that direction, because he is involved with litigation with a [person claiming to be an heir of the decedent] that could be going on for years. We could be sitting here for years waiting for the [probate] litigation to finish as it goes through the appellate process. Your order is simple and one sentence; as long as it is more than $250,000. I claim we have to satisfy that hurdle. For Your Honor to add to the record marketable securities or cash, it changes the nature and that becomes an issue.

"The Court: There is no motion to clarify. The court has not clarified, modified or changed the judgment. It is what it is. I think I was suggesting to [the defendant] that if and when he receives the ability to pay, he should pay [the plaintiff], but I am not ruling on a motion that is not before me, and I am not changing the judgment.

"[The Plaintiff's Counsel]: I can't get a ruling on the fact that he has received more than two and one-half million dollars of assets so far? I am trying to figure out how to justify that.

"The Court: To the extent that I have muddied the order sufficiently, I will vacate the order that I just made. I will vacate the findings that I just made. I am going to vacate the dicta which I just made. The motion for contempt is denied."

The plaintiff then filed the present appeal, arguing that the court's order was clear and unambiguous and that the court abused its discretion by modifying the property order and by failing to find the defendant in contempt. Because the trial court had vacated all of its findings underlying the order, vacated the order, and then denied the motion for contempt without providing the reasoning for doing so, we issued the following order on November 5, 2013: "Pursuant to Practice Book §§ 61-10 (b) and 60-5, the trial court . . . is hereby sua sponte ordered to articulate, within thirty days of this order, the factual findings and legal basis underlying its denial of the motion for contempt."[4]

On November 21, 2013, the court issued its articulation regarding the denial of the plaintiff's motion for contempt. The court stated that "[t]he defendant had inherited stock in a closely held family business. He inherited no dollars. Stock in a closely held family busi-

ness is not dollars." The court also articulated that the defendant had not received any other distribution from the Probate Court, he did not possess $100,000 of cash at the time of the hearing on the contempt motion and therefore was unable to pay that sum to the plaintiff, and the plaintiff presented no evidence that the defendant had inherited any cash or that "the stock in a closely held family business was liquid or otherwise readily convertible into dollars or that there existed a market for said shares." The court also determined that its order was ambiguous because it did not state whether the $250,000 trigger to pay $100,000 to the plaintiff must be in "actual dollars or other assets valued at $250,000." It further concluded that "[t]he defendant's failure to pay to the plaintiff $100,000 upon receiving shares of stock in his family business was not a wilful disobedience of a clear and understandable order; rather, it illustrates a good faith disagreement as to what was meant in that court order. The defendant had a good faith belief that his receipt of stock in the family business was not the condition precedent triggering his obligation to pay to the plaintiff $100,000. . . . The defendant's interpretation of the court order was reasonable and made in good faith. Any violation was excused by what can only be a good faith dispute or misunderstanding."

We begin our analysis by setting forth the relevant legal principles and our standard of review. "Contempt is a disobedience [of] the rules and orders of a court which has power to punish for such an offense. . . . Contempt may be civil or criminal in character. . . . A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him. . . . [T]he punishment [for civil contempt] is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public." (Citation omitted; internal quotation marks omitted.) *Hardy* v. *Superior Court*, 305 Conn. 824, 834, 48 A.3d 50 (2012); see also *Eric S.* v. *Tiffany S.*, 143 Conn. App. 1, 9, 68 A.3d 139 (2013).

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007); *Przekopski* v. *Zoning Board*

*of Appeals*, 131 Conn. App. 178, 191, 26 A.3d 657, cert. denied, 302 Conn. 946, 30 A.3d 1 (2011); *Lynn* v. *Lynn*, 130 Conn. App. 319, 327, 23 A.3d 771 (2011); see also *Martocchio* v. *Savoir*, 130 Conn. App. 626, 630, 23 A.3d 1282, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011).

In the present case, the court articulated that its order requiring the defendant to pay $100,000 to the plaintiff after he received $250,000 of his inheritance "was ambiguous because it did not specify whether the inheritance of $250,000 must be in actual dollars or other assets valued at $250,000." We are not bound by the trial court's assessment of the clarity of the order at issue; rather, that presents a legal question subject to de novo review by this court. See *In re Leah S.*, supra, 284 Conn. 693–94; *Przekopski* v. *Zoning Board of Appeals*, supra, 131 Conn. App. 191. Nevertheless, we need not resolve this issue in the present case.[5] Even if we assume, without deciding, that the order was clear and unambiguous, we conclude that the court did not abuse its discretion in denying the plaintiff's motion for contempt.

In its articulation, the court stated that at the time of the hearing on the plaintiff's motion, "the defendant did not possess $100,000 of cash and so was unable to pay that sum, even if it had been due." It also stated that the defendant "had a good faith belief that his receipt of stock in the family business was not the condition precedent triggering his obligation to pay to the plaintiff $100,000" and therefore, was a good faith disagreement as to what was meant by the order, and was not wilful disobedience. It concluded that "[a]ny violation was excused by what can only be a good faith dispute or misunderstanding."

At the outset, we note that "[t]he fact that an order has not been complied with fully does not dictate that a finding of contempt must enter." *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 326, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009). "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Quaranta* v. *Cooley*, 130 Conn. App. 835, 840–41, 26 A.3d 643 (2011); see also *Adamo* v. *Adamo*, 123 Conn. App. 38, 49–50, 1 A.3d 221, cert. denied, 298 Conn. 916, 4 A.3d 830 (2010).

The court articulated that the defendant lacked the ability to pay $100,000 to the plaintiff. At the hearing, the defendant testified: "I don't have the money to pay [the plaintiff] right now." The court's finding, as set forth in its articulation, was based on the evidence and was not clearly erroneous. In making the finding of the defendant's inability to pay, the court credited the defendant's testimony. We defer to the court's assessment of the credibility of the defendant. See *Behrns* v. *Behrns*, 124 Conn. App. 794, 811, 6 A.3d 184 (2010) (trial judge sole arbiter of credibility and reviewing court unable to pass on credibility of witness). This finding also provides us with a basis to conclude that the court's denial of the motion for contempt did not constitute an abuse of discretion. "The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt." (Internal quotation marks omitted.) *Auerbach* v. *Auerbach*, supra, 113 Conn. App. 328; see also *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 398, 985 A.2d 319 (2009) ("The contemnor must establish that he cannot comply, or was unable to do so. . . . It is [then] within the sound discretion of the court to deny a claim of contempt when there is an adequate factual basis to explain the failure." [Internal quotation marks omitted.]); *Brody* v. *Brody*, 145 Conn. App. 654, 662, 77 A.3d 156 (2013).

The court also stated in its articulation that it found that the defendant's interpretation of the court order was reasonable and made in good faith, and thus did not amount to wilful disobedience. "The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion." (Internal quotation marks omitted.) *Behrns* v. *Behrns*, supra, 124 Conn. App. 808; see also *Martocchio* v. *Savoir*, supra, 130 Conn. App. 630.

At the hearing, the defendant testified: "It's my understanding I did not have to pay that until which time I got all my inheritance, and it was cash. [My attorney] was aware I would be paying [the plaintiff] when I got the liquid assets to pay her." The court was free to credit that testimony and to determine that the nonpayment was based on the defendant's good faith dispute or legitimate misunderstanding of the terms of the court's order. As such, we cannot say this constituted an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff is now known as Terry McDonald.

[2] This court has not been provided with the transcripts of the underlying dissolution action.

[3] "Our law for awarding attorney's fees in contempt proceedings is clear. General Statutes § 46b-87 provides that the court may award attorney's fees to the prevailing party in a contempt proceeding. The award of attorney's fees in contempt proceedings is within the discretion of the court. . . . In making its determination, the court is allowed to rely on its familiarity with the complexity of the legal issues involved. Indeed, it is expected that the court will bring its experience and legal expertise to the determination of the reasonableness of attorney's fees." (Internal quotation marks omitted.) *Kravetz* v. *Kravetz*, 126 Conn. App. 459, 471, 11 A.3d 1141 (2011).

[4] Practice Book § 61-10 (b) provides in relevant part: "If the court determines that articulation of the trial court decision is appropriate, it may remand the case pursuant to Section 60-5 for articulation by the trial court within a specified time period. After remand to the trial court for articulation, the trial court may, in its discretion, require assistance from the parties in order to provide the articulation. Such assistance may include, but is not limited to, supplemental briefs, oral argument and provision of copies of transcripts and exhibits." The official commentary to § 61-10 provides in relevant part: "Subsection (b) was adopted to effect a change in appellate procedure by limiting the use of the forfeiture sanction imposed when an appellant fails to seek an articulation from the trial court pursuant to Section 66-5 with regard to an issue on appeal, and the court therefore declines to review the issue for lack of an adequate record for review. In lieu of refusing to review the issue, when the court determines that articulation is appropriate, the court may now remand the case to the trial court for an articulation and then address the merits of the issue after articulation is provided. The adoption of subsection (b) is not intended to preclude the court from declining to review an issue where the record is inadequate for reasons other than solely the failure to seek an articulation, such as, for example, the failure to procure the trial court's decision pursuant to Section 64-1 (b) or the failure to provide a transcript, exhibits or other documents necessary for appellate review."

Practice Book § 60-5 provides in relevant part: "If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision. . . ."

[5] For this court to determine whether the order requiring the defendant to pay $100,000 to the plaintiff following his receipt of the stock portion of his inheritance was clear and unambiguous, we would examine the relevant memorandum of decision that dissolved the marriage of the parties and contained the financial orders of the court. See, e.g. *McCarthy* v. *Custom Design Services, Inc.*, 126 Conn. App. 274, 280–81, 11 A.3d 1094 (2011). The following course of action would be our guide: "[T]he construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . *The interpretation of a judgment may involve the circumstances surrounding the making of the judgment.* . . . Effect must be given to that which is clearly implied as well as that which is expressed." (Citations omitted; emphasis added; internal quotation marks omitted.) *Lashgari* v. *Lashgari*, 197 Conn. 189, 196–97, 496 A.2d 491 (1985); see also *Christiano* v. *Christiano*, 131 Conn. 589, 592–93, 41 A.2d 779 (1945); *Lynn* v. *Lynn*, supra, 130 Conn. App. 328 ("[*i*]n [*interpreting a judgment*], *it assists a reviewing court to keep in mind the theory on which the case was tried and on which the trial court decided it*" [emphasis added; internal quotation marks omitted]). As stated in footnote 2 of this opinion, we have not been provided with the transcripts of the proceedings underlying the two memoranda of decision that dissolved the parties' marriage and contained the attendant child custody and financial orders. Without these transcripts, we are precluded from examining the circumstances surrounding the making of the court's judgment and the order at issue.