******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VIRGINIA CHA BARBER *v.* ATIIM KIAMBU BARBER
## (AC 39755)

Lavine, Prescott and Elgo, Js.

### *Syllabus*

The defendant filed a motion to modify an award of child support that had been issued in connection with a foreign judgment of dissolution. He sought a downward modification of his child support obligations, claiming that there had been a substantial change in his and the plaintiff's financial circumstances. In support of his motion, the defendant cited statutes from Connecticut (§ 46b-86) and New York (N.Y. Dom. Rel. Law § 236 [B] [9] [b] [2] [i]), both of which permit modification of a child support order upon demonstration by the moving party of a substantial change in the financial circumstances of either party. Following the dissolution, the plaintiff moved from New York to Connecticut with the parties' four children, and the defendant moved to New Jersey. In response to the motion to modify, the plaintiff filed a motion for an order requesting the trial court to find that the New York child support guidelines applied to the defendant's motion. Prior to the dissolution of their marriage, the parties had entered a detailed separation agreement, which was incorporated into the dissolution judgment, provided that it was to be construed pursuant to New York law and required that the defendant pay the plaintiff basic child support and add-on child support. The agreement also contained a default provision, which provided, inter alia, that if a party failed to perform his or her obligations under the agreement, the aggrieved party could bring an action to enforce his or her rights, and if that action was successful, the defaulting party was liable for the aggrieved party's reasonable attorney's fees and litigation costs. The trial court granted the plaintiff's motion for order, concluding that the substantive law of New York applied to the defendant's motion to modify. Thereafter, the plaintiff filed a motion for contempt regarding the children's add-on expenses, a motion for attorney's fees and costs, and a motion for contempt regarding the defendant's alleged failure to pay his basic child support obligation. Following a hearing, the trial court, applying New York law, denied the defendant's motion to modify and the plaintiff's motions for contempt and for attorney's fees and costs. In denying the motion for contempt regarding child support, the court found that the precise amount of basic child support that the defendant owed the plaintiff was not entirely clear and unambiguous, and, therefore, it issued an order directing the parties to follow the procedure set forth in their agreement for resolving child support disputes, whereby they are to have their accountants discuss and try to reconcile any discrepancies before the parties resort to judicial intervention. Specifically, it ordered that the parties direct their accountants to utilize the New York child support guidelines formula, as well as the precise illustrations contained in relevant paragraphs of the agreement, including the use of adjusted gross income as shown on the parties' income tax returns, when making their child support calculations. On the plaintiff's appeal and the defendant's cross appeal to this court, *held*:

1. The plaintiff could not prevail on her claim that the trial court improperly rewrote the parties' agreement by issuing its order with respect to the manner in which the parties were to proceed to resolve their dispute regarding basic child support, including how to calculate the amount of basic child support the defendant owed her: the trial court, by issuing its order, did not rewrite the agreement but, instead, sought to facilitate its enforcement by providing the parties with a timeline for exchanging information as required by the agreement, and the order was necessary to narrow the issues in dispute at any future hearing, as the court ordered the parties, who appeared unable or unwilling to abide by the clear requirements of their agreement, to do what they should have done before the plaintiff filed her motion for contempt, and the court's inclusion of the term adjusted gross income in its order did not rewrite the agreement because that term was incorporated, by way of example as

to how the defendant's basic child support obligation was to be calculated, in the agreement that became part of the New York judgment of dissolution; furthermore, the plaintiff did not demonstrate that she was harmed by the court's order, as the objective of the order was to have the parties and their accountants reach an agreement regarding the defendant's basic child support obligation, and, if they could agree, there would be no need for the parties to seek judicial intervention.

2. The record was inadequate to review the plaintiff's claim that the trial court erred by failing to award her attorney's fees and costs to defend against the defendant's attempt to invalidate the agreement with respect to the law applicable to his motion to modify his child support obligations, as that court did not provide a factual or legal analysis of its denial of the plaintiff's motion for attorney's fees and costs, and this court would not speculate as to the reasons for the trial court's determination or what conduct of the parties it considered.

3. The trial court did not err by failing to award the plaintiff attorney's fees pursuant to the default provision of the parties' agreement: contrary to the plaintiff's claim, her motion for contempt regarding the children's add-on expenses was not successful, as she failed to obtain all of the add-on expenses she was seeking, and the court found that there was a good faith dispute between the parties regarding the amount the defendant owed the plaintiff, who failed to prove all of the allegations in her motion; moreover, the plaintiff's allegation that the defendant was in wilful and intentional violation of the agreement was a legal conclusion, neither party was in full compliance with the agreement, there was no evidence that the defendant was unwilling to pay what he owed and, in fact, he proposed a settlement and had a good faith reason not to pay some of the claimed expenses upon request, and the fact that the defendant offered to pay what he owed, not what was demanded of him during the litigation, should not result in his having to pay the plaintiff attorney's fees to have a court resolve disputes that the parties should have been able to resolve given that the add-on expenses and conditions were clearly spelled out in the agreement.

4. The defendant's claim on cross appeal that because he had registered the New York dissolution judgment in Connecticut pursuant to the applicable statute (§ 46b-71), the trial court improperly concluded that New York law, rather than Connecticut law, applied to the motion to modify was dismissed as moot; because the standard for modification of a child support order under both New York and Connecticut law is a substantial change in circumstances, the result would have been the same whether the court had applied New York or Connecticut law, and, therefore, there was no practical relief that could be afforded to the parties.

Argued January 17—officially released October 1, 2019

*Procedural History*

Motion by the defendant for modification of child support issued in connection with a foreign judgment of dissolution, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Tindill, J.*, granted the plaintiff's motion for order; thereafter, the court, *Colin, J.*, denied the defendant's motion to modify child support and the plaintiff's motions for contempt and for attorney's fees and costs, and issued certain orders, and the plaintiff appealed and the defendant cross appealed to this court. *Affirmed; cross appeal dismissed.*

*Sarah E. Murray*, with whom was *Christopher DeMattie*, for the appellant-cross appellee (plaintiff).

*Yakov Pyetranker*, for the appellee-cross appellant, (defendant).

*Opinion*

LAVINE, J. This postdissolution appeal arises out of motions filed by the plaintiff, Virginia Cha Barber, and the defendant, Atiim Kiambu Barber, regarding the child support provisions of their separation agreement (agreement), which was incorporated into their New York divorce decree. On appeal, the plaintiff claims that the trial court, *Colin*, *J.*, erred by (1) "rewriting" the agreement with respect to the manner in which the defendant's child support obligation is to be calculated and (2) failing to award her attorney's fees and costs to oppose the defendant's unsuccessful attempt to invalidate a provision of the agreement and to enforce the agreement's default provision regarding add-on child support. On cross appeal, the defendant claims that the trial court, *Tindill*, *J.*, erred by concluding that the substantive law of New York applied to his motion to modify child support. We affirm the judgments of the trial court with respect to the plaintiff's appeal and dismiss the defendant's cross appeal.

The following facts and procedural history are relevant to our resolution of the parties' appeals. On April 3, 2012, prior to the dissolution of their marriage, the parties entered into a highly detailed, sixty-page agreement,[1] which provides that it is to be construed pursuant to New York law.[2] On June 23, 2012, the Supreme Court of New York, county of New York, dissolved the parties' marriage and incorporated the agreement into the dissolution judgment.

At the time of dissolution, the parties and their four minor children all lived in New York City.[3] Pursuant to the agreement, the parties have joint legal custody of their children, although the children primarily reside with the plaintiff. In 2013, the defendant moved to New Jersey. The agreement contemplated that the plaintiff may relocate outside of New York City; in August, 2014, she and the children moved to Connecticut.

The agreement requires the defendant to pay the plaintiff basic child support and add-on child support.[4] The parties agreed that the defendant should have an opportunity to rehabilitate his career,[5] and, therefore, he was not required to pay the plaintiff child support from the date of dissolution through February 28, 2015.[6] On February 5, 2015, pursuant to General Statutes § 46b-71, the defendant registered the New York judgment of dissolution in the Superior Court.

On February 23, 2015, the defendant filed a "Motion for Modification, Postjudgment" (motion to modify), in which he represented that there had been a substantial change in the parties' financial circumstances and asked the trial court to modify downward his child support obligations. The motion to modify cited General Statutes § 46b-86 (modification permitted upon demonstration of substantial change in circumstances) and New

York Domestic Relations Law § 236 (B) (9) (b) (2) (i) (McKinney 2010) (same). In response to the defendant's motion to modify, the plaintiff filed a "Motion for Order Regarding the Applicable Child Support Guidelines, Postjudgment" (motion for order). On September 21, 2015, the parties appeared at short calendar before Judge Tindill, who requested supplemental briefing. On January 12, 2016, the court granted the plaintiff's motion for order, concluding that the substantive law of New York applied to the defendant's motion to modify. The court denied the defendant's motions for articulation and for reargument. The defendant appealed from Judge Tindill's decision, but this court dismissed the appeal for lack of a final judgment.

On February 1, 2016, the plaintiff filed three motions: "Motion for Contempt re: Children's Add-on Expenses, Postjudgment"; "Motion for Order re: Attorney's Fees and Expenses, Postjudment"; and "Motion for Contempt re: Child Support, Postjudgment." The plaintiff's motions and the defendant's motion to modify were heard by Judge Colin on September 7 and 8, 2016. Although the defendant continued to disagree with Judge Tindill's decision that New York law applied to the motion to modify, during the hearing on the motion to modify he accepted Judge Colin's position that the court was bound by Judge Tindill's decision, which was the law of the case.[7] The plaintiff and the defendant agreed that the standard for modification of child support is the same under Connecticut and New York law, namely, that the moving party must prove a substantial change in circumstances. On September 19, 2016, Judge Colin denied the defendant's motion to modify and the plaintiff's motions for contempt and for attorney's fees and costs. On October 28, 2016, the plaintiff appealed from the judgments denying her motions for attorney's fees and for contempt regarding the children's add-on expenses. Although she did not appeal from the judgment denying her motion for contempt regarding child support, the plaintiff claims that in issuing a prospective order related to that motion, the court "rewrote" the agreement. On November 7, 2016, the defendant filed a cross appeal regarding the choice of law order issued by Judge Tindill. Additional facts will be provided as necessary.

In addressing the parties' appeals, we are guided by our general standard of review. "An appellate court's review of a trial court decision is circumscribed by the appropriate standard of review. . . . The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the

record." (Internal quotation marks omitted.) *St. Germain* v. *St. Germain,* 135 Conn. App. 329, 333, 41 A.3d 1126 (2012).

I

THE PLAINTIFF'S APPEAL

On appeal, the plaintiff claims that Judge Colin erred by (1) rewriting the parties' agreement with respect to the manner in which the defendant's basic child support obligation is to be calculated and (2) failing to award her attorney's fees and costs to defend the defendant's alleged effort to invalidate a provision of the agreement and to enforce the default provision of the agreement. We disagree with the plaintiff's claims and, therefore, affirm the judgments of the trial court.

A

The plaintiff first claims that in adjudicating her motion for contempt regarding child support, the court issued an order with respect to the manner in which the parties were to proceed to resolve their dispute regarding basic child support, namely, how they were to calculate the amount of basic child support the defendant owes the plaintiff. The plaintiff claims that the court rewrote the agreement by ordering the parties to direct their accountants to use the "adjusted gross income as shown on the parties' income tax returns to calculate the amount of child support each party claims to be owed . . . ." (Internal quotation marks omitted.) The order constitutes a rewriting of the agreement, the plaintiff argues, because the agreement requires the parties to use the New York child support guidelines formula, not the adjusted gross income shown on the parties' tax returns. We disagree that in issuing its order, the court rewrote the agreement.

The following facts pertain to the plaintiff's claim that the court improperly rewrote the agreement by issuing its order related to the calculation of basic child support. In the contempt motion, the plaintiff quoted Article IX, paragraph 2,[8] of the agreement concerning the defendant's obligation to pay basic child support. She also quoted Article IX, paragraph 4, of the agreement, which concerns how the parties are to calculate the amount of basic child support the defendant owes the plaintiff for the coming year.[9] The plaintiff claimed that under the terms of, and formula in, the agreement, the defendant's child support obligation from March 1, 2015 to February 29, 2016, was $8148.24 per month, or $97,778.88 for the year. The plaintiff alleged that the defendant had paid only $42,159.96 for the year and, therefore, owed her $55,618.91. She alleged that the defendant had violated the agreement wilfully and intentionally, and, therefore, she was compelled to incur legal fees and costs to enforce the defendant's basic child support obligation. She also alleged that pursuant to Article XXXI of the agreement, she was

entitled to attorney's fees and expenses if she prevailed on the motion. She asked the court to hold the defendant in contempt and to order him to pay her $55,618.92 immediately, and to pay her reasonable attorney's fees and costs associated with the motion for contempt.

Judge Colin denied the plaintiff's motion for contempt and issued an order to facilitate the resolution of the dispute between the parties. In its order, the court stated that the motion involves a claim by the plaintiff that the defendant is in contempt of his basic periodic percentage based child support obligation. The court found that the original basic child support order contains a somewhat complicated income based formula and contemplates that there may be future disagreement between the parties as to the exact amount of child support the defendant is to pay the plaintiff. The agreement specifically provides that "[i]f the parties cannot agree on the amount of basic child support that the [defendant] will pay for the upcoming twelve month period, the [defendant] will pay at least that support that he deems appropriate and the [plaintiff] will accept same without waiving any of her rights and may seek judicial intervention . . . ." The court further found that the agreement "expressly contemplates that in the event of a dispute, the parties' respective accountants shall discuss [the issues] and, if they are still unable to agree, either party may seek [judicial intervention]." (Internal quotation marks omitted.)

The court found that "the precise amount of the payment order is not entirely clear and unambiguous . . . ." Of particular significance to the present issue is the court's finding that there was *no evidence* that before they sought judicial intervention, the parties had fulfilled the agreement's condition precedent that their accountants discuss the issues in dispute. The court, therefore, issued the order of which the plaintiff complains.

The court ordered that, within thirty days, the plaintiff was to deliver to the defendant a computation prepared by her accountant of the amount that she claims is owed to her by way of periodic, basic child support. Within sixty days, the defendant is to deliver to the plaintiff a computation prepared by his accountant of the amount that he believes he owes the plaintiff. The court directed the parties "to instruct their accountants, as per the previous ruling of Judge Tindill, to utilize the New York child support guidelines formula in general, and the precise illustrations contained in paragraph 7 on pages 16 and 17 of their [agreement] in particular (including the use of adjusted gross income as shown on the parties' income tax returns as per paragraphs 7 (a) and (b) on pages 16 and 17 of the [agreement]), in order to prepare the necessary calculations."

The court noted that the plaintiff's computation of

her income for use in the child support calculation was not consistent with the adjusted gross income shown on her income tax returns and that the plaintiff did not adequately explain the discrepancy. The court stated that perhaps the discrepancy "can be addressed by the accountants during their discussions . . . [and] [t]he amount of the claimed arrearage shall also be discussed between the accountants as contemplated by the language of the order quoted above." The defendant was to pay any agreed on arrearage no later than March 1, 2017. If a dispute exists after the parties conclude the steps the court referenced in its order, either party may file a motion for order that will be heard by the court. In light of the language of the current New York child support order and the evidence presented at the hearing on September 7 and 8, 2016, the court concluded that its order was necessary to insure full compliance with the New York court orders and to narrow the issues in the dispute at any future hearing.

The plaintiff's claim requires us to determine whether, in adjudicating the plaintiff's motion for contempt, the court rewrote the agreement when it determined the path the parties were to follow to resolve their dispute as to the amount of child support the defendant owed the plaintiff. Pursuant to our de novo review, we conclude that the court did not rewrite the agreement.

"The law of judgments . . . is well settled. The construction of a judgment is a question of law with the determinative factor being the intent of the court as gathered from all parts of the judgment. . . . As a general rule, the court should construe [a] judgment as it would construe any document or written contract in evidence before it. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . If faced with . . . an ambiguity, we construe the court's decision to support, rather than to undermine, its judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances. . . . We review such questions of law de novo. . . . Additionally, our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Rogan* v. *Rungee*, 165 Conn. App. 209, 223, 140 A.3d 979 (2016).

Our review of Judge Colin's September 19, 2016 decision discloses that the court was well aware of the parties' dissolution judgment, including the child support provisions in the agreement. It also was aware that Judge Tindill had ordered that New York law was to be applied to the calculation of the defendant's basic

child support obligation. The court found that the parties agreed to a complicated income based formula and that they contemplated that there may be future disagreement about the amount of basic child support. The court further found that the agreement addresses how the parties were to reconcile any disagreement regarding the amount of basic child support the defendant owed the plaintiff for the coming twelve months. In fact, the court quoted paragraph 3 of the relevant article of the agreement, i.e., the parties' "respective accountants shall discuss same and if they are still unable to agree either party may seek [judicial intervention]." (Internal quotation marks omitted.) The court found that the precise amount of the payment order was not entirely clear and unambiguous. Most significantly, the court found no evidence that before they sought judicial intervention, the parties fulfilled the condition precedent to have their respective accountants discuss discrepancies and come to an agreed on sum, if possible.[10] The court's finding that the parties failed to abide by their agreement to resolve child support disputes themselves before resorting to judicial intervention is the genesis of the court's order.

Rather than rewriting the agreement, the court's order seeks to facilitate its enforcement by providing the parties with a timeline for exchanging information as required by the agreement. The parties are to instruct their accountants, "as per the previous ruling of Judge Tindill, to utilize the New York child support guidelines formula in general, and the precise illustrations contained in paragraph 7 on pages 16 and 17 of their [agreement] in particular (including the use of adjusted gross income . . .), in order to prepare the necessary calculations." The parties' accountants are to discuss the claimed arrearage as contemplated by the court's order. The court stated that to insure full compliance with the current court order, its order was necessary given the evidence presented to the court on September 6 and 7, 2016, and the current New York child support order. Moreover, the order was necessary to narrow the issues in dispute at any future hearing. In other words, the court ordered the parties, who appeared unable or unwilling to abide by the clear requirements of their agreement, to do what they should have done before the plaintiff filed her motion for contempt. We also conclude that the court's including the term "adjusted gross income" in its order did not rewrite the agreement because the term is incorporated, by way of example as to how the defendant's basic child support obligation was to be calculated, in the agreement that became part of the New York judgment of dissolution.[11]

Moreover, the plaintiff has not demonstrated that she was harmed by the court's order. As the court stated, the parties were to provide their respective accountants with the relevant financial information, and they were to meet and resolve any differences using the New York

child support guidelines. The objective of the court's order is to have the accountants and the parties reach an agreement regarding the defendant's basic child support obligation. If they can agree, there is no need for the parties to seek judicial intervention.

For the foregoing reasons, we conclude that the court did not rewrite the agreement. The plaintiff's claim, therefore, fails.

B

The plaintiff also claims that the court erred by failing to award her attorney's fees and costs (1) to oppose the defendant's unsuccessful effort to invalidate a provision of the agreement and (2) to enforce the agreement's default provision regarding add-on child support. The essence of the plaintiff's claims is that when the court adjudicated her motions for contempt and for attorney's fees and costs, it applied the wrong legal standard and failed to enforce the parties' agreement because the defendant breached the agreement. We disagree that the court erred in declining to award the plaintiff attorney's fees and costs.

Generally, we apply the abuse of discretion standard when reviewing a trial court's decision to deny an award of attorney's fees. "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *Munro* v. *Munoz*, 146 Conn. App. 853, 858, 81 A.3d 252 (2013).

"The general rule of law known as the American rule is that attorney's fees and ordinary expense and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. . . . This rule is generally followed throughout the country. . . . Connecticut adheres to the American rule. . . . There are few exceptions. For example, a specific contractual term may provide for the recovery of attorney's fees and costs . . . or a statute may confer such rights." (Internal quotation marks omitted.) *Giordano* v. *Giordano*, 153 Conn. App. 343, 352–53, 101 A.3d 327 (2014).

"Because a stipulation is considered a contract, [o]ur interpretation of a separation agreement that is incorporated into a dissolution decree is guided by the general principles governing the construction of contracts. . . . Thus, if there is definitive contract language, the determination of what the parties intended by their . . . commitments is a question of law [over which our review is plenary]." (Citation omitted; internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 390, 985 A.2d 319 (2009).

The plaintiff first claims that the court erred by failing to enforce the agreement when it denied her attorney's fees and costs to defend against the defendant's attempt to invalidate the agreement with respect to the law applicable to the defendant's motion to modify child support. The plaintiff's claim fails because the record is inadequate for our review.

The following facts are relevant to the plaintiff's claim. On February 23, 2015, the defendant filed a motion to modify in which he recited the relevant portions of the parties' agreement regarding basic child support, namely, Article IX, paragraph 2. He claimed that his income had decreased and his expenses had increased and that the plaintiff's income had increased and her expenses had decreased. The motion contained no reference to the substantive law to be applied to the motion to modify nor did it request a change in the agreement regarding the controlling law.

On February 1, 2016, the plaintiff filed a "Motion for Order re: Attorney's Fees and Expenses, Postjudgment." She predicated the motion on Article XXXI, paragraph 4, of the agreement and highlighted the following language of the paragraph: "If either party by any action . . . seeks to . . . declare any of [the agreement's] terms and conditions as invalid . . . said party . . . shall reimburse the other party and be liable for any and all such party's reasonable attorney['s] fees and expenses . . . ."[12] In the motion for attorney's fees and costs, the plaintiff states that on February 23, 2015, the defendant filed the motion to modify that "attempts to declare some of the [dissolution] judgment's terms and conditions invalid and apply Connecticut law since his child support obligation would be significantly lower if the Connecticut child support guidelines were applied."[13] She alleged that the defendant had refused to abide by the terms of the New York judgment, and, therefore, she was forced to file a motion for order to enforce the judgment, specifically, that the trial court should apply the New York child support guidelines. The plaintiff further represented that the defendant had opposed the motion for order and that Judge Tindill heard lengthy arguments from counsel and ordered supplemental briefing on the issue. On January 12, 2016, Judge Tindill ruled on the motion for order, concluding that New York law applies to the basic child support order. The plaintiff alleged that the defendant's actions, proceedings, and/or defenses resulted in a decision rejecting his claims, and, therefore, pursuant to Article XXXI, paragraph 4, of the agreement, the defendant "shall reimburse the plaintiff and be liable for any and all of her reasonable attorney's fees and expenses." The plaintiff alleged that she had incurred approximately $36,000 in attorney's fees and expenses with respect to the motion to modify.

Judge Colin denied the motion for attorney's fees and expenses stating that the "plaintiff has failed to prove that the defendant's filing and prosecution of an unsuccessful motion for modification of child support is tantamount to an action that seeks to vacate or set aside the parties' dissolution agreement, or constitutes an effort to declare any of its terms invalid, such that she is entitled to legal fees pursuant to Article XXXI, paragraph 4, of the [agreement]. As a result, the motion is denied."

On October 7, 2016, the plaintiff filed a motion for reconsideration of her motions for contempt and for attorney's fees with respect to (1) enforcing the add-on child support provision of the agreement and (2) the motion to modify and her motion for order. She claimed that she was successful in enforcing the add-on child support provision of the agreement because the court ordered the defendant to pay her $36,954.73 of the disputed amount. With respect to the default provision of the agreement, the plaintiff argued that, in the motion to modify, the defendant "sought to declare the [New York] judgment's terms and conditions invalid by arguing that the Connecticut child support guidelines, not the New York child support guidelines, should apply to any modification of his child support obligation."[14] In order to defend the choice of law provision in the agreement, the plaintiff represented that she filed a motion for order pursuant to the default provision of the agreement. She sought to enforce the terms of the New York judgment, specifically, that the court should apply the New York child support guidelines. She also recounted the procedural history of the motion to modify before Judge Tindill. The court denied the plaintiff's motion for reconsideration without explanation. The plaintiff took no further action prior to filing the present appeal.

On appeal, the plaintiff claims that the court erred in failing to award her attorney's fees and costs because the defendant was unsuccessful in his effort to invalidate the parties' agreement by arguing that Connecticut's child support guidelines should apply to his motion to modify. In response, the defendant argues, in part, that the court properly denied the plaintiff's motion for attorney's fees and costs by concluding that the motion to modify was not tantamount to an action to vacate or set aside the agreement. He notes that the word "modify" does not mean to vacate, set aside, invalidate, or void, and that the word modify is not included in paragraph 4 of Article XXXI of the agreement. We agree with the defendant.

"An agreement between divorced parties . . . that is incorporated into a dissolution decree should be regarded as a contract. . . . In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable

construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings. . . . [Where] . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Breiter* v. *Breiter*, 80 Conn. App. 332, 336–37, 835 A.2d 111 (2003).

The United States Supreme Court has stated that "[v]irtually every dictionary we are aware of says that to modify means to change moderately or in minor fashion." (Internal quotation marks omitted.) *MCI Telecommunications Corp.* v. *American Telephone & Telegraph Co.*, 512 U.S. 218, 225, 114 S. Ct. 2223, 129 L. Ed. 2d 182 (1994). "A modification is defined as [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject matter intact." (Internal quotation marks omitted.) *Jaser* v. *Jaser*, 37 Conn. App. 194, 202, 655 A.2d 790 (1995). Conversely, to vacate means to "annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment." Black's Law Dictionary (5th Ed. 1979).

Our review of the motion to modify discloses that the defendant represented that there had been a substantial change in the parties' circumstances; he asked that his child support obligation be modified downward. He wanted to pay less, not to have his entire child support obligation eliminated or voided. We, therefore, agree with the trial court that filing and prosecuting an unsuccessful motion to modify is not tantamount to, or the same as, an action that seeks to vacate or set aside the parties' agreement. Moreover, the New York dissolution judgment specifically provides that the parties may file a motion for modification if there is a substantial change of circumstances.[15]

The plaintiff's issue on appeal is that Judge Colin erred by failing to award her attorney's fees for successfully "defend[ing] against the defendant's attempts to invalidate the parties' [agreement] with respect to what law applied to his child support modification . . . ." In denying the plaintiff's motion for attorney's fees and costs, the court stated that "[t]he plaintiff failed to prove that the defendant's filing and prosecution of an unsuccessful motion for modification of child support is tanta-

mount to an action that seeks to vacate or set aside the parties' dissolution agreement or constitutes an effort to declare any of its terms invalid . . . . ." The court did not provide a factual or legal analysis of its denial of the plaintiff's motion for attorney's fees and costs. We will not speculate as to the reasons for the court's determination or what conduct of the parties it considered. See *Hane* v. *Hane*, 158 Conn. App. 167, 174 n.9, 118 A.3d 685 (2015). We, however, note that the court found that the defendant's motion to modify was unsuccessful, not that the plaintiff successfully defended the choice of law provision of the agreement. The record, therefore, is inadequate for our review.

2

The plaintiff also claims that the court erred by failing to award her attorney's fees pursuant to the default provision of the agreement. We disagree.

On February 1, 2016, the plaintiff filed a "Motion for Contempt re: Children's Add-On Expenses, Postjudgment" (motion for contempt). In the motion for contempt, the plaintiff represented that the judgment of dissolution required the defendant to pay 75 percent of the children's health care expenses,[16] $2500 per calendar year for each child's agreed on summer activities, $2500 for each of the twins to attend nursery school, 50 percent of the children's tutoring expenses, and 50 percent of the children's extracurricular activities, not to exceed $10,000 for the children per school year. The motion for contempt also set forth the provisions of paragraphs 1, 2, and 3 of Article XXXI of the agreement,[17] which, in summary, provide that if a party fails to perform, the aggrieved party shall notify the defaulting party who has ten days in which to cure the default. If the defaulting party does not cure, the aggrieved party may bring an action to enforce his or her rights. If the aggrieved party's action is successful, the defaulting party shall become liable to the aggrieved party for reasonable attorney's fees and expenses. If an action is commenced and the defaulting party complies with the agreement before judgment is rendered, the action shall be deemed to have resulted in a judgment in favor of the aggrieved party.

The plaintiff further represented that she sent the defendant numerous letters with supporting documents on various dates between August 22, 2012 and December 3, 2015, notifying him of past due add-on child support expenses. She claimed that as of December 31, 2015, the defendant's share of the children's total add-on expenses was $73,418.55 and that he had paid only $35,455.62. The plaintiff alleged that the defendant *wilfully and intentionally* violated the agreement and that she was compelled to incur legal fees and costs of $37,455.62 to enforce the defendant's child support obligations. She asked that the defendant be held in contempt and ordered to pay her attorney's fees and

costs immediately.

The court heard argument on the plaintiff's motion for contempt on September 7 and 8, 2016, and issued its order on September 19, 2016. Although the plaintiff had claimed that the defendant was in contempt of his obligations under the New York dissolution judgment for failing to pay certain child related expenses, the court found that the plaintiff had "failed to prove by clear and convincing evidence that the defendant had wilfully and intentionally violated a clear and unambiguous court order."[18] The court also found that there was a good faith dispute as to a number of the expense items. The plaintiff, by her own admission, mistakenly asked for reimbursement for expenses to which she was not entitled, such as babysitter expenses when she was not gainfully employed. In addition, the court found that the defendant "may have made some payments directly to certain vendors that may or may not be included as part of the plaintiff's claim." For those reasons, the court stated that "no contempt finding shall enter and no costs or counsel fees shall be awarded."

With respect to the amount of money the defendant owed the plaintiff for outstanding add-on expenses, the court found that the defendant was more credible than the plaintiff. Therefore, in accordance with the proposed order submitted by the defendant, the court ordered him to pay the plaintiff $36,954.73.[19] The court rejected the defendant's claim that he was entitled to a 50 percent discount for some of the expenses because he had not consented to them, as there was no factual or legal basis for such a claim. The court denied the plaintiff's motion for reconsideration.

On appeal, the plaintiff acknowledges that, in the motion for contempt, she asked the court to find the defendant in contempt for wilfully and intentionally violating the agreement, and she does not claim that the court erred when it failed to find the defendant in contempt. Her argument is that the court erred in that it likely assumed that it had to find the defendant in contempt pursuant to General Statutes § 46b-87 in order to award her attorney's fees and costs. She argues that she was entitled to attorney's fees and costs pursuant to the agreement, which did not require a finding of contempt. She argues that the evidence demonstrated that the defendant was in breach of the add-on child support provision of the agreement. She underscores this point by noting that the court ordered the defendant to pay her $36,954.73, a sum the defendant proposed because he knew he was indebted to her. The plaintiff argues that because she prevailed, she was successful and, therefore, entitled to attorney's fees and costs.[20]

The defendant argues that the plaintiff is not entitled to attorney's fees and costs because she was "not successful, only partly successful," and did not receive the full amount of add-on child support that she was

seeking. He also argues that, pursuant to the allegations of the motion for contempt, the plaintiff set out to prove that he was in wilful and intentional violation of the agreement. He notes that the plaintiff conceded such at the hearing before Judge Colin.

"To impose contempt penalties, whether criminal or civil, the trial court must make a contempt finding, and this requires the court to find that the offending party wilfully violated the court's order; failure to comply with an order, alone, will not support a finding of contempt. . . . Rather, to constitute contempt, a party's conduct must be wilful . . . . A good faith dispute or legitimate misunderstanding about the mandates of an order may well preclude a finding of wilfulness. . . . Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . Without a finding of wilfulness, a trial court cannot find contempt and, it follows, cannot impose contempt penalties." (Citations omitted; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 98–99, 161 A.3d 1236 (2017).

"[T]he fact that an order has not been complied with fully does not dictate that a finding of contempt must enter. . . . A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or in actions of the [alleged contemnor] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Aliano* v. *Aliano*, 148 Conn. App. 267, 277, 85 A.3d 33 (2014).

Although the plaintiff claims on appeal that she is entitled to attorney's fees and costs pursuant to the agreement, that is not what she alleged in her motion for contempt. She alleged that the defendant was in wilful and intentional violation of the agreement. Her prayer for relief asked that the defendant be held in contempt and ordered to pay her $37,455.62.

The court found that there was a good faith dispute as to a number of expense items because the defendant may have paid vendors directly that may or may not be included in the plaintiff's claim and the plaintiff conceded that she had requested reimbursement for babysitting expenses to which she was not entitled because she was not gainfully employed. Moreover, the court found the defendant to be more credible than the plaintiff with respect to the amount outstanding for the

add-on child care expenses.

On the basis of the court's factual findings, we agree with the defendant's contention that the plaintiff's motion for contempt was not successful because she failed to obtain all of the add-on expenses she was seeking. The court found a good faith dispute between the parties regarding the amount the defendant owed the plaintiff. The allegations in the motion for contempt were just that, allegations, and the plaintiff failed to prove them all. Also, her allegation that the defendant was in breach of the agreement was a legal conclusion. The plaintiff herself breached the agreement by requesting funds to which she was not entitled, i.e., babysitter expenses. Furthermore, the defendant claimed that he had paid vendors directly for some expenses. Under the circumstances, it appears that neither party was in full compliance with the agreement. In addition, there was no evidence that the defendant was unwilling to pay what he owed; in fact, he proposed a settlement. See footnote 17 of this opinion. The court's findings disclose that the defendant had a good faith reason not to pay some of the claimed expenses upon request. The fact that he offered to pay what he owed, not what was demanded of him during the litigation, should not result in his having to pay the plaintiff attorney's fees to have a court resolve disputes that the parties should have been able to resolve given that the add-on child care expenses and conditions are clearly spelled out in the agreement. There were no complicated questions of law to be decided by the court. For these reasons, we conclude that the court did not err in failing to award the plaintiff attorney's fees and costs.

II

THE DEFENDANT'S CROSS APPEAL

On cross appeal, the defendant claims that because he had registered the New York dissolution judgment in Connecticut pursuant to § 46b-71,[21] Judge Tindill improperly concluded that New York law, rather than Connecticut law, applied to the motion to modify. We conclude that the standard for modification of a child support order is a substantial change in circumstances under both New York and Connecticut law. A substantial change in circumstances is the standard Judge Colin applied in denying the motion to modify. Thus, irrespective of which state's law applies, there is no practical relief that we can grant the defendant. The cross appeal, therefore, is moot and must be dismissed.

We briefly review the procedural history underlying the cross appeal. On February 23, 2015, the defendant filed a motion to modify, in which he represented that since the time of dissolution, he had moved to New Jersey and that the plaintiff and the parties' children had relocated to Connecticut. The defendant set forth the basic child support, as well as the add-on child

support he had been ordered to pay the plaintiff. The defendant claimed that there had been a substantial change in circumstances due to a reduction in his income and an increase in his expenses coupled with the plaintiff's increase in income and reduction in expenses. In support of his motion, he cited § 46b-86 (substantial change in circumstances) and New York Domestic Relations Law § 236 (B) (9) (b) (2) (i) (McKinney 2010) (same). He asked the court to modify downward or otherwise reduce his child support and add-on support obligations.

On July 23, 2015, in response to the motion to modify, the plaintiff filed a motion for order asking the court to find that child support guidelines are substantive in nature and, therefore, that the New York child support guidelines apply to the defendant's motion to modify. In support of her motion for order, the plaintiff cited § 46b-71 (b).[22] The defendant filed a memorandum of law in opposition to the plaintiff's motion for order in which he argued that Connecticut law applied pursuant to § 46b-71 and the Uniform Interstate Family Support Act (uniform act), General Statutes § 46b-212 et seq. The parties appeared before Judge Tindill at short calendar on September 21, 2015. The court, thereafter, ordered the parties to submit supplemental briefs.[23] The parties submitted their briefs on October 5, 2015; the defendant argued that Connecticut substantive law applied, and the plaintiff argued that New York substantive law applied.

The court issued its ruling on the motion for order on January 12, 2016, concluding that the Supreme Court of New York was no longer a court of competent jurisdiction and that there is no conflict among § 46b-71, the uniform act, and the Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B. The court found that the parties had contemplated that the plaintiff and the children would move from New York City. The court concluded that child support guidelines are substantive in nature and that it must apply the substantive law of New York, which requires that Connecticut law apply with respect to the modification of the June 23, 2012 child support order. The court further concluded that "Connecticut law requires that the New York Child Support Standards Act . . . as amended [by] the Domestic Relations Law and Family Court Act of the State of New York, and the parties' agreement appl[ied] to any modification of the June 23, 2012 child support order." On January 27, 2016, the defendant filed a motion for articulation and a motion to reargue. The court denied both of the defendant's motions. The defendant appealed to this court, but the appeal was dismissed for lack of a final judgment.

A hearing on the motion to modify was held before Judge Colin. During the hearing, the parties agreed that the substantial change of circumstances standard

applied to the motion to modify.[24] On September 19, 2016, the court denied the motion to modify. Although the defendant had alleged that his income had decreased and his expenses had increased and that the plaintiff's income had increased and her expenses had decreased, the court found, on the basis of the evidence presented, that the defendant had failed to prove by a preponderance of the evidence that his income had decreased, that his expenses had increased or that the plaintiff's income had increased. In fact, the court found that the defendant's income was greater at the time of the hearing than it was at the time of dissolution.[25] The court found, however, that the defendant had proved that the plaintiff's expenses were reduced substantially due to her remarriage. Nonetheless, the court concluded that those changes did not warrant a modification of the defendant's child support obligations. The parties had moved from New York, each to a different state, and the defendant spends far less parenting time with the children than the amount of time to which he is entitled under the existing court orders. Moreover, concluded the court, the defendant's basic child support obligation is percentage based and effectively modifies itself pursuant to changes in the parties' incomes. Finally, the court stated that the percentage, including "caps," the defendant is obligated to pay the plaintiff for other child related expenses is still appropriate notwithstanding the fact that the plaintiff's remarriage has resulted in a decrease in her overall expenses.

After the plaintiff appealed from the judgments rendered by Judge Colin on her motions for contempt and for attorney's fees and costs, the defendant filed the present cross appeal in which he claims that Judge Tindill improperly concluded that the substantive law of New York applied to his motion to modify, rather than the Connecticut child support guidelines. In response to the cross appeal, the plaintiff argues that the cross appeal should be dismissed on three grounds: (1) the cross appeal is jurisdictionally defective because it was not taken from a final judgment;[26] (2) it is moot because Judge Colin denied the motion to modify; and (3) it is moot because the legal standard for modification of a child support order is the same in both Connecticut and New York. We agree with the plaintiff that the cross appeal is moot because the standard for granting a motion to modify is the same in New York and Connecticut, such that the parties' interests are not adverse, and consequently there is no practical relief that we can afford the parties. The parties agree that the standard in both New York and Connecticut is a substantial change in circumstances. Judge Colin found that there was no substantial change of circumstances and, therefore, denied the motion to modify. Neither party has taken an appeal from the denial of the motion to modify on that basis.

"Mootness implicates [the] court's subject matter

jurisdiction and is thus a threshold matter for us to resolve. . . . It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . Because mootness implicates subject matter jurisdiction, it presents a question of law over which our review is plenary. . . . Mootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance becaue of a change in the condition or affairs between the parties. . . . A case is moot when due to intervening circumstances a controversy between the parties no longer exists. (Citations omitted; internal quotation marks omitted.) *Sargent* v. *Sargent*, 156 Conn. App. 109, 113–14, 113 A.3d 72 (2015).

The substance of the issue the defendant has raised on cross appeal is that Judge Colin applied New York law when he adjudicated the motion to modify because he was bound by Judge Tindill's decision on the plaintiff's motion for order that New York law applied. The defendant's cross appeal falls short because the standard for modification in both New York and Connecticut is the same—a substantial change in circumstances. In denying the motion to modify, Judge Colin found that the agreement provides that the defendant's child support is self-modifying and, more importantly in the present context, that the defendant failed to prove that his income has decreased since the time of dissolution. Moreover, the defendant's add-on child support was still appropriate.

Our plenary review of the law regarding a motion to modify child support confirms that the standard in New York and Connecticut, as noted, is the same, i.e., a substantial change of circumstances. "When a party seeks to modify the child support provision of a prior order or judgment, including an order or judgment incorporating without merging an agreement or stipulation of the parties, he or she must demonstrate a substantial change in circumstances . . . . It is the burden of the moving party to establish the change in circumstance[s] warranting the modification . . . . In determining whether there has been a substantial change in circumstances, the change is measured by comparing the payor's financial situation at the time of the application for a downward modification with that at the time of the order or judgment . . . . A parent's child support obligation is not necessarily determined by his or her current financial condition, but rather by his or her ability to provide support . . . as well as his or her assets and earning power." (Citations omitted; internal quotation marks omitted.) *Malbin* v. *Martz*, 88 App. Div. 3d 715, 716, 930 N.Y.S.2d 67 (2011), citing N.Y. Dom. Rel. Law § 236 (B) (9) (b) (2) (i) (McKinney

2010); see also *Kolodny* v. *Perlman*, 143 App. Div. 3d 818, 820, 38 N.Y.S.3d 613 (2016), citing N.Y. Fam. Ct. Act § 451 (McKinney 2014).

"When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties." (Internal quotation marks omitted.) *Coury* v. *Coury*, 161 Conn. App. 271, 282, 128 A.3d 517 (2015). "To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential. . . . A conclusion that there has been a substantial change in financial circumstances justifying a modification . . . based only on income is erroneous; rather, the present overall circumstances of the parties must be compared with the circumstances existing at the time of the original award to determine if there has been substantial change." (Internal quotation marks omitted.) Id., 283.

As stated, our plenary review of the law regarding a motion to modify child support reveals that the standard for adjudication of such a motion is the same in both New York and Connecticut. In the present case, the defendant does not claim that the court erred in concluding that he had failed to prove that there had been a substantial change in circumstances to warrant granting the motion to modify. He argues that Judge Tindill improperly decided that New York law applied to the motion to modify, and it thereby became the law of the case. Judge Tindill's decision, however, was not controlling of the issue to be decided by Judge Colin. Whether Judge Colin had applied New York or Connecticut law, the result would have been the same, and, therefore, there is no practical relief that we can afford the parties.[27] "If no practical relief can be afforded to the parties, the appeal must be dismissed." (Internal quotation marks omitted.) *Chase Manhattan Mortgage Corp.* v. *Burton*, 81 Conn. App. 662, 664, 841 A.2d 248, cert. denied, 268 Conn. 919, 847 A.2d 313 (2004). We, therefore, dismiss the cross appeal.

The judgments on the plaintiff's appeal are affirmed; the cross appeal is dismissed.

In this opinion the other judges concurred.

[1] Within the agreement, the parties refer to the document as "Stipulation of Settlement."

[2] Article XXXVI of the agreement states: "The Stipulation shall be construed pursuant to the laws of the State of New York."

[3] The parties' children were born in 2002, 2004, and 2010 (twins), respectively.

[4] The child support add-ons include expenses related but not limited to

health insurance, education, summer camp, child care, and extracurricular activities.

[5] The defendant is a retired professional athlete.

[6] Article IX, paragraph 1, of the agreement provides in relevant part: "Both parties acknowledge and represent that the [plaintiff] is receiving more than 50 [percent] of the parties' marital assets under this Agreement because, in part, it represents a pre-payment of the [defendant's] basic child support obligation through February 28, 2015."

[7] The defendant noted that Judge Colin did not agree that New York law applied to the motion to modify. During the hearing on the motion to modify, Judge Colin stated, "[B]ut couldn't the other side argue Judge Tindill said it's New York law? I don't agree with her, but that's what she said." He also stated: "Even if I agreed with you now [that Connecticut law applies], we're stuck. That's that law of the case, right?"

[8] Article IX, paragraph 2, of the agreement states in relevant part: "Commencing on March 1, 2015 and continuing on the first day of each month thereafter, during the lifetime of the [defendant], during the lifetime of the [plaintiff], and until the emancipation of a Child . . . the [defendant] shall pay to the [plaintiff] basic child support in accordance with the formula set forth in the presently existing [New York Domestic Relations Law] § 240 . . . except that the [defendant's] basic child support obligation shall not be less than $3,513.33 per month . . . nor exceed $10,333.33 per month (based on an income, as defined in the [Child Support Standards Act, N.Y. Dom. Rel. Law § 240 (McKinney 2010)], of $400,000 per year) . . . . " (Internal quotation marks omitted.)

[9] Article IX, paragraph 4, of the agreement provides in relevant part: "The parties shall use their best efforts to calculate the amount of basic child support that the [defendant] will pay for the upcoming twelve month period, which commences on March 1st. If the parties cannot agree on the amount of basic child support that the [defendant] will pay for the upcoming twelve month period, the [defendant] will pay at least that support that he deems appropriate and the [plaintiff] will accept same without waiving any of her rights and may seek judicial intervention . . . ."

[10] The court quoted Article XXVI of the agreement, to wit: "The [defendant] and the [plaintiff] at any and all times . . . promptly shall make, execute and deliver any and all such other further instruments as may be necessary or desirable for the purpose of giving full force and effect to the provisions of this [agreement], without charge therefore."

In his brief on appeal, the defendant notes internal inconsistencies in the agreement, particularly with respect to the calculation of basic child support. At trial, the plaintiff conceded the inconsistencies regarding the calculation of basic child support, including adjusted gross income.

The plaintiff testified, in part, on cross-examination:

"[The Defendant's Counsel]: The agreement says two different things, doesn't it?

"[The Plaintiff]: I believe so.

"[The Defendant's Counsel]: And you signed it?

"[The Plaintiff]: Yes."

[11] Article IX, paragraph 7, of the agreement sets forth the formula used to calculate the presumptive incomes of the parties. It uses their adjusted gross income figures as set forth in their 2010 income tax returns.

[12] Article XXXI of the agreement is titled "Default Obligations." Paragraph 4 therein provides: "If either party by any action, proceeding, defense, counterclaim or otherwise, seeks to vacate or set aside this [agreement], or declare any of its terms and conditions as invalid, void or against public policy, by any reason including, but not limited to, fraud, duress, incompetency, overreaching or unconsciounaiblity, said party shall not be entitled to attorney['s] fees if the relief sought is denied and shall reimburse the other party and be liable for any and all such party's reasonable attorney['s] fees and expenses, provided and to the extent that such action, proceeding, counterclaim or defense results in a decision, judgment, decree or order dismissing or rejecting said claims."

[13] We note that the defendant's motion to modify did not state that the defendant sought to have some of the dissolution judgment's terms and conditions declared invalid and makes no claim that his child support obligation would be less under Connecticut law.

[14] Our review of the motion to modify discloses that the defendant requested a downward modification of his basic child support obligation. He did not ask the court to apply Connecticut law. The choice of law issue was raised by the plaintiff in her motion for order.

[15] The first paragraph of the New York judgment of divorce states: "EACH PARTY HAS A RIGHT TO SEEK A MODIFICATION OF THE CHILD SUPPORT ORDER UPON A SHOWING OF: (I) A SUBSTANTIAL CHANGE IN CIRCUMSTANCES; OR (II) THAT THREE YEARS HAVE PASSED SINCE THE ORDER WAS ENTERED, LAST MODIFIED OR ADJUSTED; OR (III) THERE HAS BEEN A CHANGE IN EITHER PARTY'S GROSS INCOME BY FIFTEEN PERCENT OR MORE SINCE THE ORDER WAS ENTERED, LAST MODIFIED, OR ADJUSTED; HOWEVER, IF THE PARTIES HAVE SPECIFICALLY OPTED OUT OF SUBPARAGRAPH (II) OR (III) OF THIS PARAGRAPH IN A VALIDLY EXECUTED AGREEMENT OR STIPULATION, AS HERE, THEN THAT BASIS TO SEEK MODIFICATION DOES NOT APPLY."

[16] Health care included medical, dental, optical, orthodontic, co-pays, pharmaceutical, psychiatric, psychotherapy, occupational therapy, physical therapy, speech therapy, and audiology expenses not covered by insurance.

[17] Article XXXI, titled "Default Obligations," provides in relevant part: "1. All payments are due in accordance with the terms of this [a]greement. The parties covenant and agree that if in the event it is alleged by either party that the other has failed to perform, or there has been a lack of performance, or there has been a breach by the other . . . then the party presumptively aggrieved shall notify the other party . . . of the default . . . and the other party shall have ten . . . days, after receipt of such written notice, to cure such default . . . . In the event the party fails to cure . . . the aggrieved party . . . may commence such proceedings to enforce his or her rights with respect to any of the terms of this [a]greement . . . .

"2. The parties covenant . . . that if such legal proceedings are commenced, the defaulting party shall become liable to the aggrieved party for reasonable attorney's fees and reasonable expenses of litigation in bringing on such proceedings if the aggrieved party is successful in any court proceeding and an order or judgment is rendered in his or her favor by reason of the actions of the defaulting party.

"3. It is understood and agreed that in the event a party shall institute any such legal proceedings, and after the commencement thereof and before Judgment is or can be entered, the defaulting party shall comply with such term or condition of this [a]greement, then the proceeding instituted shall be deemed to have resulted in a Judgment, Decree or Order in favor of the aggrieved party. The provisions of this paragraph shall be in addition, and without prejudice, to any other rights or remedies to which the aggrieved party may be entitled."

[18] The plaintiff has conceded that at trial she was seeking a finding of contempt against the defendant for what she deemed to be his wilful violations of the agreement. On appeal, however, she argues that the court's failure to find the defendant in contempt did not absolve him of his contractual obligation to pay her attorney's fees and costs. We decline to reach the plaintiff's breach of contract claim, which was not raised before the trial court. "To review a claim advanced for the first time on appeal and not raised before the trial court amounts to a trial by ambuscade of the trial judge." *Musolino* v. *Musolino*, 121 Conn. App. 469, 477, 997 A.2d 599 (2010).

[19] The sum of $36,954.73 represents the plaintiff's arrearage claim of $58,186.03 less a credit of $21,231.30 due the defendant.

[20] Article XXXI, paragraph 2, of the agreement provides in relevant part that if a party commences legal proceedings to enforce the terms of the agreement, "the defaulting party shall become liable to the aggrieved party for reasonable attorney's fees and reasonable expenses of litigation in bringing on such proceedings if the aggrieved party is successful in any court proceeding and an order or judgment is rendered in his or her favor by reason of the actions of the defaulting party."

[21] General Statutes § 46b-71 (a) provides in relevant part: "Any party to an action in which a foreign matrimonial judgment has been rendered, shall file, with a certified copy of the foreign matrimonial judgment, in the court in this state in which enforcement of such judgment is sought, a certification that such judgment is final . . . ."

[22] General Statutes § 46b-71 (b) provides in relevant part: "Such foreign matrimonial judgment shall become a judgment of the court of this state where it is filed and shall be enforced and otherwise treated in the same manner as a judgment of a court in this state; provided such foreign matrimonial judgment does not contravene the public policy of the state of Connecticut. A foreign matrimonial judgment so filed shall have the same effect and may be enforced or satisfied in the same manner as any like judgment of a court of this state and is subject to the same procedures for modifying, altering, [or] amending . . . as a judgment of a court of this state; provided,

in modifying, altering, [or] amending . . . any such foreign matrimonial judgment in this state the substantive law of the foreign jurisdiction shall be controlling.''

[23] The court ordered the parties to brief the following question: "Assuming, for the sake of argument, that these modification proceedings were pending in New York, would a New York court decline to exercise jurisdiction under the [uniform act], and defer to a Connecticut court the determination of the modification issue pursuant to Connecticut's child support guidelines.''

[24] Counsel for the defendant stated in response to the court's inquiry as to the standard for modification in New York: "It is virtually identical in terms of how modification works to Connecticut.''

[25] The defendant conceded that his income had increased since the time of dissolution.

[26] On his cross appeal form, the defendant stated that the judgment from which he was appealing was "Judge Tindill's 1/12/16 order finding New York law applies to Connecticut child support modification proceeding, which order was effectuated by Judge Colin's 9/19/16 orders and thus made an appealable judgment.''

Practice Book § 61-8, titled "Cross Appeals,'' provides in relevant part: "Any appellee or appellees aggrieved by the judgment or decision from which the appellant has appealed may jointly or severally file a cross appeal . . . .'' Practice Book § 63-4, titled "Additional Papers To Be filed by Appellant and Appellee when filing Appeal,'' provides in relevant part that "[i]f any appellee wishes to: (A) present for review alternative grounds upon which the judgment may be affirmed; (B) present for review adverse rulings or decision of the court which should be considered on appeal in the event the appellant is awarded a new trial; or (C) claim that a new trial rather than a directed judgment should be ordered if the appellant is successful on appeal, that appellee shall file a preliminary statement of issues within twenty days from the filing of the appellant's preliminary statement of the issues. . . .''

[27] In response to the plaintiff's claim that the cross appeal is moot, the defendant argues that it is not moot because this court can offer prospective relief. Although his argument is difficult to discern and not adequately briefed, the defendant seems to be arguing that he could obtain practical relief if this court were to determine that Judge Tindill improperly decided that New York law applied to the motion to modify. In that circumstance, the defendant arguably would benefit by the application of Connecticut law with respect to other issues that may arise in the case. Whether in the future the parties will litigate issues affected by the choice of law question is speculative. "[A] court will not speculate about future events . . . .'' *Hammick* v. *Hammick*, 71 Conn. App. 680, 683, 803 A.2d 373, cert. denied, 262 Conn. 908, 810 A.2d 273 (2002). Moreover, appellate courts do not issue advisory opinions about events that may or may not occur. "Because this court has no jurisdiction to give advisory opinions, no appeal can be decided on its merits in the absence of an actual controversy for which judicial relief can be granted.'' (Internal quotation marks omitted.) *Sherman* v. *Sherman*, 41 Conn. App. 803, 806, 678 A.2d 9 (1996).